Judge Mills
delivered the opinion.
This is an action of ejectment, brought on the demise of Hannah Hood as lessor of the plaintiff, against Richard Mathers; and on the trial, the lessor of the plaintiff gave in evidence, a patent from the commonwealth of Virginia to William Greenough, dated on the 20th February, 1786, and a conveyance from William Greenough to John Hood, for an undivided moiety of the tract contained in the patent, which deed bore date on the 29th July, 1786. She also proved the boundaries of the patent, and that the defendant resided within it, at the commencement of the suit. She next offered in evidence and read, without objection, two depositions, which proved that John Hood, the grantee in the aforesaid deed, died on the 16th of July, 1787, and left the lessor of the plaintif, his wife and also one son, by the same woman, who was his and her only child, named John Hood, and that he also died after he was over twenty-one years of age, on the 23d September, 1812, leaving his said mother then and still living. The same witnesses also proved, that they heard and saw John Hood, the younger, after his arrival at the age of twenty-one years, sign, seal, publish and declare a will to be his last will and testament, and that at the doing thereof he was of sound disposing mind and memory, and that they had compared the certified copy annexed to the depositions, with the original will now on file and remaining of record in the office of the register of wills, for the county and city of Philadelphia, in *554 the state of Pennsylvania, and that the copy so certified was a true copy of the original will. Both the said witnesses also deposed, that they were the same persons who were witnesses to the original will. The lessor of the plaintiff then offered the copy of the will annexed to their depositions, which devised the estate to Hannah Hood the lessor of the plaintiff his mother. The said copy appeared, by a certificate thereon, to have been proved by one of the same subscribing witnesses, before the register of wills, of Philadelphia, whose certificate was also annexed, stating it to be a true copy of the original will and probate thereof on file and remaining in his office. To this certificate the seal of office was annexed. After this, followed the certificate of the mayor and chief magistrate of the city of Philadelphia, stating that the register who certified the copy was register of wills for said city and county, and also president of the register’s court for the same county and city, duly commissioned and sworn, and that his certificate and attestation was in due form of law and entitled to full faith and credit. To this last certificate of the mayor, his name was subscribed and the seal of the corporation of the city affixed. These certificates of authentication the counsel for the lessor of the plaintiff first read to the court, for the purpose of dispensing with the production of the original will, by shewing that it was retained in the office and could not be produced, and that for this cause, the copy ought to be admitted. To the reading of this copy of the will, the defendant’s counsel objected, because the copy was not proved and recorded in this state, and because it was not properly authenticated, and because the depositions of the attesting witnesses, before read, were inadmissible to prove the copy. The court sustained the objections, and would not permit the copy to be read, to which opinion the plaintiff excepted, and the correctness of this opinion is the first question made by the assignment of error. We cannot concur with the counsel in the court below in all the reasons assigned for the rejection of the will. It is true, this court has decided that copies of wills, taken from foreign copies, which had been proved and admitted to record in a county court of this state, might be given in evidence. It is also decided, that the authenticated copy of a will, from a sister state, proved according to the law there, which law allowed of its probate as to personal estate only, did not entitle the will to be given in evidence as a genuine *555 paper, on the production of its probate in such state and certificates of authentication only. But it is no where decided, that a will which is not proved and recorded in a court of this country passes no title, or that such will might not be produced and proved on the trial as an unrecorded deed. Nor do we perceive in this case, any solid objection to giving a sworn copy in evidence on such proof as is here exhibited, and shewing that the original was detained in the custody of the law, in another state. But it is evident that to authorise such a will, or a copy to be given in evidence, which never had been proved before a court of competent jurisdiction for the purpose of admitting it to record, the execution of the will by the testator, ought to be proved in such manner as to make it a valid will: or, in other words, every act ought to be proved, on the part of the testator and witnesses, which the law re quires, to make the will a good and valid will to pass real estate. This leads us to examine the proof of the witnesses in their depositions, to discover whether they have proved as much as the statute requires to make a valid will, In this respect their testimony is defective. They have proved the publication of the will, and the acknowledgement of it by the testator, and also his capacity at the time, to make it. But they have failed to prove that they or any other witnesses attested it, subscribing their names in his presence, which is required by the act of assembly. See 1 Litt. 611. 614. This seems to be essential, by the words of the act, as part of the proof to be made, and their testimony, on this subject is silent, and for this reason alone, we concur with the court below in rejecting the will, because it was not fully proved upon the trial.
A copy of a will made & recorded in a sister state & proved & recorded here is evidence, not so if such copy be tendered as evidence on the probate alone of such sister state.
A sworn copy of a will proved & recorded in the proper office of a sister state, as evidence here as an unrecorded deed, but the depositions must shew that every requisite necessary to constitute a good will according to our statuteof wills, has been complied with in such sister state.
A slight variance b’tw’n the real situation of the title of lands sold for the direct tax, & the recital in th' marshalls deed, may be reconcil'd by parol evidence.
After this decision of the court below, the plaintiff offered to read to the jury, a deed from Joseph Crockett, late marshall of the district of Kentucky, to John Hood, dated on the 11th November, 1807. This deed recites that the tract sold and then to be conveyed was 30,000 acres, being the same quantity contained in the aforesaid patent of Wm. Greenough, and that it was listed as the property of John Hood, and charged with the direct tax and costs, for which John Gray, & co. of Logan county, purchased the whole, it having been sold by Daniel L. Morrison, collector of the district for the third collection district at Bardstown, on the 17th February, 1803. The deed then purports to convey to John Hood as assignee of said Grey, & co. the whole of *556 said tract of land, and appears to have been regularly acknowledged in the clerk’s office of this court, at its date, and committed to record. To the reading of this deed the defendant objected, and the court sustained the objection, and rejected the deed, which is the next point presented for our consideration. We do not perceive the grounds taken by the court below in the rejection of this deed. It appears to have been regularly acknowledged and recorded. It is true, it describes the tract sold and conveyed as 30,000 acres, when the interest of John Hood, in the tract in question, was 15,000 acres, a moiety of the 30,000; and this is certainly a variance. But it was competent for the plain tiff to shew by other evidence, that this was the tract intended to be sold, and the identity of the land sold with the tract in question, might then have formed a question of fact proper for the consideration of this jury. We are aware that the supreme court of the United States has held the sales of land in this state for direct tax, to great strictness, and has decided that it lies on the party claiming title under such sale, to shew and prove that the law directing the sales had been complied with in every respect, before the sale should pass a valid title. But this, the plaintiff might have shewn by subsequent proof. And he was prevented from doing this, by the rejection of the deed. Had the deed been admitted, and he had failed to shew this, it might have formed another, and quite a different question, whether the deed passed any title. We should, however, have great difficulty in disturbing the judgment of the court below, if this were the only objection deemed tenable: For the plaintiff who took his exception has made a very vague one. He has not stated what was the objection taken by his adversary; or on what ground the court below proceeded in rejecting this deed; but, in a loose and vague manner, has stated, that the opposing counsel objected, and the court rejected the deed. It may be matter of considerable doubt, whether this court ought to notice such exceptions. Besides, we do not perceive the object, which the counsel for plaintiff had in view in producing this deed. Taking the evidence as true, which he had before adduced. He had shewn title for an undivided moiety in John Hood, the elder, and his death in 1787. He further had shewn, that he left a son and sole heir, and that heir, after he was twenty-one years of age, had died unmarried and childless, in 1812, when by the law of descents in force, the estate *557 descended to the mother, he having no children, father or brother or sister living. What object the counsel could then have by this deed, when he had shewn his title complete in the lessor of the plaintiff, can scarcely be seen. As we are not, however, favored with all the evidence, and by this, his object may be kept from our view, we have thought proper to say this much on that subject.
As the trial progressed, the counsel for the lessor of the plaintiff read in evidence a deed from a former sheriff of the county, where the land lay, to James H. Stewart, and then the copy of a deed from said James H. Stewart to John Hood, the former dated on the 12th of September, 1800, and the latter on the 11th November, 1807. The deed from the sheriff recites a sale of the tract of land in question, being 30,000 acres, all listed with the auditor, and sold by him as the property of John Hood. The defendant’s counsel then objected to reading the copy of the deed from Stewart to Hood, and the court sustained the objection and rejected the deed. The counsel for the plaintiff then introduced George Helm as a witness, who deposed that he acted as deputy sheriff for the sheriff who had made the deed in question, and that he made the sale to Stewart—that he was furnished with the auditor’s list of non residents’ lands; and that the 30,000 acres was described in said list on the same water course with the present tract in contest in the name of Hood—that the sale was advertised, and, on the day of sale, Stewart purchased the tract as the agent of Hood, as he, Stewart, stated, and for his benefit, and that there was no other tract of 30,000 acres on the list in the name of Hood. The plaintiff’s counsel again offered the copy of the deed from Stewart to Hood, in connection with, the testimony of Helm, and it was again rejected. The deed from Stewart to Hood recited, that he had bought the land for John Hood as his agent, and with his money.
We have here the same complaint against the exceptions taken by plaintiff’s counsel, because it contains no specific objection, as on the last point And we are equally at a loss to perceive the motives of giving the sheriff’s title in evidence, when he appears to have sustained his cause of action without it. He seems, however, to have suffered by the adventure, and his adversary prevented him from shewing how the title returned. We cannot perceive any objection to giving in evidence the copy of the deed from *558 Stewart to Hood. It appears to have been regularly acknowledged and recorded, and appears to restore to Hood the title which Stewart had acquired by the sale; and, for any thing which appears in the record, we should deem it legal evidence. So far as we can perceive the ground of the objection taken in the court below, it must have been because a copy and not the original was produced. According to the principles adopted by this court in the case of Tebbs vs. White, 4 Bibb, 42, this furnished no valid objection to the deed, and it ought to have been admitted as evidence After this last decision of the court below, several others followed, which were excepted to. But they appear to have resulted entirely from the admission of the deed of the sheriff for taxes to Stewart, and the exclusion of the deed from Stewart to Hood. Consider them with the deed from Stewart to Hood excluded, and they are correct. But considered as if the deed from Stewart to Hood was admitted, and they are evidently erroneous. For this reason, as it is conceived by this court that the deed ought not to have been excluded, they are not particularly noticed. One, however, which arose out of a motion to the court to instruct the jury, on the part of the plaintiff, will be noticed. This was an instruction asked by the plaintiff, that if the jury believed that John Hood the younger was an infant at the date of the sale for taxes, that the sale for that reason was void. This the court overruled, and, we apprehend, correctly. It was decided by this court in the case of Elliot's heirs vs. Garrard, &c. 1 Marsh. 472, that the land of infants was not privileged from sale for taxes at a particular period, when that sale was made. This remained to be the case till the act of the 21st December, 1799, 2 Litt. 316, and this sale was made before that period. The most material points existing in the subsequent procedings, in this cause, arise out of the evidence adduced on the part of the defendant. He produced and read a deed from William Greenough, the patentee, for the other undivided moiety of the whole tract, to a certain Joseph James, and next a deed of the same quantity from James to himself. He also produced the order of the Hardin county court, made at their April term, 1801, appointing six commissioners under the several acts of assembly for the conveyance arid division of lands. He next proved that said commissioners were called upon in 1802 by him, and that they run a division line dividing the tract into two *559 equal parts. No further account was taken of these proceedings till after this suit was brought in 1817, when said commissioners conveyed the moiety, which, they say, was allotted to the defendant, to him by a deed which they acknowledged before the clerk of the county court, who proceeded to record it. It was further proved that before, and even since this suit was brought, Hannah Hood, the lessor of the plaintiff, had a known and acknowledged agent in the county where the land lay, but not at the time the division line was run. The plaintiff moved the court to instruct the jury, first, that the deed was void, if the foregoing facts were true; and also because the proceedings of division did not comply with the law. Secondly—that if the deed was executed after the commencement of the suit, it was no bar to the action. These instructions the court refused to give, and the correctness of these decisions is now presented for the decision of this court.
A copy of a deed regularliy recorded, is evidence.
The lands of infants were liable to sale for taxes 'til Dec. 1799.
Persons deriving title bydeed from the commissioners under the various acts for dividing and conveying lands, must shew that the laws have been strictly complied with.
We have been led, necessarily, to a critical examination of the several acts of assembly concerning the conveyance and division of lands, in scrutinizing the points now presented. The acts on this subject are numerous, and it has been a fruitful source of legislation. The first is found in 1 Litt. 123. This is the case of a resident being a tenant in common with a non-resident; and the resident has attempted to divide with the non-resident under these acts holding the legal estate. Such a case appears to be provided for by the first act. On examining the others, they seem to contemplate the case of one holding the legal estate and the others an equity, except the third section of the act found in 1 Litt. 689, which embraces the case of both being residents; and except also the 9th section of the act contained in 4 Litt. 238, which applies the provisions of the third section of the act last named to the case of nonresidents and residents holding the legal estate. If the division in question can be supported, it must be by the first section of the act first alluded to, which is the first act upon the subject: For the division line having been run in 1802, it could not have been done under the last recited act, which then had no existence. It may well be doubted whether all these acts ought not to receive a strict construction, as they allow of a partition without controversy before a tribunal competent to decide any dispute, and, in some instances, admit exparte proceedings. At all events, it is deemed a good rule, that the party claiming under *560 them ought to shew that every requisite of the law had been complied with. The question then presents itself, have the provisions of the act, just named, been complied with in the present instance? That act requires and authorises no conveyance after the partition is made. But it directs that the “commissioners shall make return of such land, by them so divided, with the quantity and names of the parties concerned, and by whom called upon to do the business, to the county court of the county where such land may lie, to be therein recorded.” By returning the land, we apprehend, is intended a description of the boundaries of the whole tract, and of the particular lots divided, together, with the names of each party holding interests, so that it may duly appear who were parties to the partition; and that return must be made, not to the clerk’s office, but to the court, whose business it was to direct the recording thereof. None of these requisites have been complied with in the present instance. We do not conceive that the deed attempted to be made in this instance can form a substitute for such a return. The division does not appear thereby to be made between Hood and the defendant. Hood, who was the real co-tenant of the other moiety, was no party thereto, and therefore it could not bind hint. It barely assigns to the defendant his quantity, without regard to the other claimant: nor has the deed ever been presented in court. Under this act, then, the partition cannot be sustained.
A partition of lands under the act of 1792, must be returned to the county court, together with the names of the parties between whom partition is made, the commissioners have no power to make a deed, or the clerk to record the report unles ordered by the court.
The act of 1797 of the same subject authorises the execution of a deed, but still requires it to be returned to the court, and requires the one party to “call on” the other before partition.
The question then remains, can the deed be supported under the last mentioned act of 1811? The last section of this act refers to the third section of the act entitled an “act to reduce into one the several acts for the conveyance and division of lands,” passed in 1797, which will be found in 1 Litt. 689, as the rule by which such division may be made. The section so referred to does seem to recognise a conveyance, but also requires a division, to be recorded in the county where such land may lie. The same section also refers to the preceding section for the rules by which the division must be made, and that section still requires the return to be made to the court, and not to the clerk’s office. Moreover, the third section itself applies only to cases where “either party shall refuse when called on for that purpose.” Now here no application or refusal, with regard to the present division, is pretended. No division is returned with the deed, but only the boundaries of the de *561 fendants part; nor has the conveyance or any division been returned to the court, but only acknowledged before the clerk. Besides if all these difficulties could be removed, we do not conceive that the commissioners, who began their proceedings under the first act could complete them under the last, nor does it appear that they intended to do so.—If both the first and last acts are to be considered as in force, and the last is to be considered as cumulative, and not a substitute for, and a repeal of, the first, of which the court entertain some doubt, it is evident, that under whichsoever the party may attempt to act, he is bound to pursue it throughout, and to show that he complied with all its requisites, and the provisions of one cannot be blended with the other, and brought in aid of defective proceedings, pursuing neither entirely. The court below, therefore, erred in refusing to instruct the jury that the deed was void, and that it presented no bar to the plaintiff's recovery; and the verdict and judgment, therefore, which, were for the defendant, in conformity with the instructions of the court, must be reversed and set aside with costs, and the cause remanded for new proceedings, not inconsistent with this opinion.
Commissioners making partition must proceed under the one or the other of those acts, and not blend the provisions of the two.
B. Hardin for appellant, Wickliffe for appellee.